# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 6152 | DATE | 8/3/2001 |
| CASE TITLE | | Chicago Trax, Inc. vs. AMS Neve, Inc. | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) [ ] Filed motion of [ use listing in "Motion" box above.]
(2) [ ] Brief in support of motion due _____.
(3) [ ] Answer brief to motion due _____. Reply to answer brief due _____.
(4) [ ] Ruling/Hearing on _____ set for _____ at _____.
(5) [ ] Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) [ ] Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) [ ] Trial[set for/re-set for] on _____ at _____.
(8) [ ] [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) [ ] This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    [ ] FRCP4(m)  [ ] General Rule 21  [ ] FRCP41(a)(1)  [ ] FRCP41(a)(2).
(10) [■] [Other docket entry] Enter Memorandum Opinion and Order. Motion for summary judgment granted in part and denied in part.

(11) [■] [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | AUG - 6 2001 date docketed | 49 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| | courtroom deputy's initials | 01 AUG -3 PM 0:23 Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO TRAX, INC., d/b/a, CHICAGO TRAX RECORDING, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMS NEVE, INC., a New Jersey corporation, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> No. 99 C 6152 <br><br> Judge Rebecca R. Pallmeyer |

DOCKETED
AUG - 6 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff Chicago Trax, Inc. ("Trax") is dissatisfied with a digital recording console, the "Capricorn," that it purchased from Defendant AMS Neve, Inc. ("AMS") in 1997. In this action, Trax seeks recovery for fraud, breach of contract, and negligent misrepresentation. In earlier rulings, the court granted AMS's motions to dismiss Trax's fraud and negligent misrepresentation claims. Trax's Amended Complaint alleges breach of contract (Count I) and breach of warranty (Count II) claims. AMS now moves for summary judgment on both counts. After considering the evidence submitted by each party, the court grants the motion in part and denies it in part.

## FACTS

Plaintiff Trax operates a music recording studio in Chicago, Illinois. (Defendant's Statement of Undisputed Facts in Compliance with Rule 56.1(A)(3) of District Court for Northern District of Illinois [hereinafter "Def. Rule 56.1(A)(3) St."] ¶ 1.) Defendant AMS is a distributor of analog and digital audio mixing consoles and other equipment for use in the entertainment industry. (Id. ¶ 2.) In 1997, Trax

49

purchased a digital mixing console known as the Capricorn from AMS. (*Id.* ¶ 7.) The parties disagree about what documents constitute the full and complete expression of the purchase agreement. Trax argues that a document, signed on October 2, 1997, by Reid Hyams, president of Trax, is the exclusive statement of the contract. (Ex. N, attached to Defendant's Reply Affidavit in Further Support of Motion for Summary Judgment Dismissing Counts I and II [hereinafter "Def. Reply Aff."].) This document (hereinafter the "Agreement of 10/2") contains a paragraph that sets forth the parties' responsibilities in the event that Trax was unable to make a profit from the Capricorn. That paragraph states in pertinent part that:

> AMS Neve and Chicago Trax agree to assess the operational, technical and fiscal performance of the Capricorn during the first twelve months following commissioning. Should the Capricorn . . . not perform as specified by AMS Neve, or it is mutually determined and agreed, that despite Chicago Trax's concerted efforts, the Capricorn is not being accepted or patronized to a point that adversely [affects] Chicago Trax's business, AMS Neve agrees to assist Chicago Trax in marketing the Capricorn at Chicago Trax or, negotiate the exchange of the AMS Neve Capricorn with an AMS Neve analog mixing system of equal or greater value.

(Agreement of 10/2, Ex. N to Def. Reply Aff.) Trax contends that AMS has breached this provision of the contract. According to Trax, the Capricorn has proved unprofitable and AMS has neither helped to market the Capricorn nor negotiated the exchange of the Capricorn for an analog mixing system of equal or greater value. Trax further argues that AMS is liable for breach of an implied warranty because the Capricorn does not perform consistently the purposes and functions for which it was sold. Based on these two theories, Trax seeks $1.8 million in damages from AMS.

In response, AMS contends that it is not liable for breach of contract, that Trax has waived any implied warranty for the Capricorn, and that Trax has also waived its right to recover damages. In support of these theories, AMS argues that the contract to purchase the Capricorn is set forth, not solely of the Agreement of 10/2, but also in another document signed by both parties on August 21, 1997, which states additional terms and conditions of sale. This additional document (hereinafter the "Trax Terms") contains paragraphs that purport to waive both any implied warranty for the Capricorn and Trax's right to damages resulting from the sale of the Capricorn. The warranty paragraph of the Trax Terms states in pertinent part:

> **THE WARRANTY CONTAINED IN THIS SECTION IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, AND ALL OTHER WARRANTIES, INCLUDING BUT NOT LIMITED TO ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY DISCLAIMED. AMS NEVE INC. DISCLAIMS ALL WARRANTIES, INCLUDING BUT NOT LIMITED TO ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO ANY ITEMS OF EQUIPMENT, OR SUB-SYSTEMS INCORPORATED IN THE EQUIPMENT, MANUFACTURED BY ANYONE OTHER THAN AMS NEVE INC. OR ITS AFFILIATES.**

(Trax Terms ¶ 1(e), Ex. K to Def. Reply Aff.) (Boldface/Capitalization in original.) The waiver of damages provision states: "In no event shall AMS Neve Inc. be liable (including, without limitation, under any theory in torts) for any loss of use, revenue, anticipated profits or special, indirect, incidental or consequential damages arising out of or in connection with this agreement or the use or performance of the equipment." (*Id.* ¶ L.)

On May 9, 1999, representatives from both of the parties met in Chicago. Def. Rule 56.1(A)(3) St. ¶ 13.) Although the record does not indicate what transpired at this meeting, the record does contain a letter dated May 12, 1999, a few days after the meeting, from Jeffrey H. Weinberger, General Counsel for AMS, to Scott C. Colky, then-counsel for Trax, in which Weinberger wrote that AMS would be willing to "swap" an AMS analog console for the Capricorn. (Ex. L to Def. Reply Aff.) The letter includes the following caveat, however: "As we discussed, any trade-in must be conditioned upon [AMS] locating a purchaser for the Capricorn. [AMS] would pursue a purchaser aggressively on a 'best-efforts' basis, offering such inducements as extended warranty protection and on-site factory training." (Id. ¶ 1.) Under the heading "[The] continued marketing of Capricorn for music," the letter goes on to state:

> We reiterate AMS'[s] offer to make its product manager, Paul Berry, available for consultation, and introduction to Mr. Hyams' contacts in the music industry. As you may recall, Mr. Hyams had declined this offer on April 16, for the reasons we've discussed. We are also prepared to continue working with Mr. Hyams on any mutually agreeable joint promotional activities.

(Id. ¶ 2.) In response to this letter of May 12, 1999, Colky promptly sent Weinberger a letter dated May 13, 1999. (Ex. O, Def. Reply Aff.) In the May 13 letter, Colky wrote:

> After reviewing the entirety of your May 12th letter, it appears AMS/Neve is ignoring the terms of the parties' agreement. Your letter suggests that you sell Trax's Capricorn and then have Trax buy a new console from your company. The contract provides for the exchange of the Capricorn for an analog mixing system of equal or greater value.
> ***
> Your option entitled, "The continued marketing of Capricorn for music," fails to deal with the "or" question and does not set out whether AMS Neve will provide a budget for marketing the Capricorn for music as opposed to post production recording.

- 4 -

(*Id.*) Colky then closes the letter with the following: "It appears that litigation remains Trax['s] only viable option. It is my hope that the parties use the next ten (10) days to negotiate other alternatives. Otherwise upon my return, I will prepare a lawsuit." (*Id.*) The next evidence in the record of communication between the two parties is a letter dated July 19, 1999, from Colky to Weinberger. The letter states, in its entirety:

> Dear Mr. Weinberger:
> I am sorry that all efforts at settlement of this matter have failed. Pursuant to our phone conversation and agreement, I will serve Mr. Blomquist as your local counsel who will appear and file responsive pleadings.
> I am enclosing a draft of the Complaint which is very close to being finalized. This complaint will be filed and served on Mr. Blomquist on July 26, 1999.
> If AMS/Neve is interest[ed] in avoiding expensive and embarrassing litigation, my client remains willing to return the Capricorn to you. AMS/Neve would pay Chicago Trax $585,000.00 to purchase a new analog console. Full releases and a confidentiality agreement would be signed by both parties.
> Please let me know prior to July 26, 1999, if a settlement is possible.
> Very truly yours,
> [Signature]
> Scott C. Colky

(Ex. M to Def. Reply Aff.) Trax then made good on the letter's threat of litigation and brought the present suit.

## DISCUSSION

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). To determine whether a genuine

issue of material fact exists, courts must construe all facts and draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party may not rest upon mere allegations in the pleadings or conclusory statements in the affidavits but must support its contentions with admissible evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Summary judgment is particularly suitable in cases that involve the interpretation of written contracts. *Tingstol Co. v. Rainbow Sales Inc.*, 218 F.3d 770 (7th Cir. 2000). Trax's Amended Complaint alleges breach of contract (Count I) and breach of warranty (Count II). AMS now moves for summary judgment on both Counts.

### A.     Count I-Breach of Contract

In its Amended Complaint, Trax first alleges that AMS breached the contract for the sale of the Capricorn because AMS failed to satisfy the requirements of the Agreement of 10/2. As described above, that Agreement provides that, should the Capricorn prove unsuccessful in Trax's market, "AMS Neve agrees to assist Chicago Trax in marketing the Capricorn at Chicago Trax or, negotiate the exchange of the AMS Neve Capricorn with an AMS Neve analog mixing system of equal or greater value." (Agreement of 10/2, Ex. N to Def. Reply Aff.) Trax contends that AMS has breached this provision of the contract because, according to Trax, the Capricorn has proved unprofitable and AMS has neither helped to market the Capricorn nor negotiated an exchange for an analog mixing system.

To prevail on a breach of contract claim in Illinois, a plaintiff must establish the following elements: (1) the existence of a valid and enforceable contract; (2)

performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) injury to the plaintiff as a result of the breach. *Kastel v. Winnetka Bd. of Educ., Dist. 36*, 975 F. Supp. 1072, 1082 (N.D. Ill. 1997) (*citing Berry v. Oak Park Hosp.*, 256 Ill. App.3d 11, 19, 628 N.E.2d 1159, 1165 (1st Dist. 1993)). For purposes of this motion for summary judgment, the court will consider only the third element: whether AMS breached its contract with Trax for the sale of the Capricorn. The remaining elements are either undisputed or may be deemed admitted.

Here, AMS was required by the contract to take one of two actions in the event the Capricorn proved unprofitable to Trax: either assist Trax in marketing the Capricorn or negotiate the exchange of the Capricorn for an AMS analog console of equal or greater value. After examining the record, the court concludes there are disputes as to whether AMS fulfilled either of these obligations. First, in the May 12, 1999, letter from Weinberger to Colky, Weinberger offers to make AMS's product manager available "for consultation, and introduction to Mr. Hyams' contacts in the music industry." (Ex. L, Def. Reply Aff.) The next sentence of the letter, however, states that Hyams had declined this offer on April 16, "for the reasons we've discussed." (*Id.*) The record does not indicate why Hyams refused this offer. In any event, AMS has not satisfied the court that its offer to make its product manager available for "consultation" meets the contractual requirement that AMS assist Trax in marketing the Capricorn.

Nor is there undisputed evidence that AMS negotiated the exchange of the Capricorn for an AMS analog console of equal or greater value. In the letter of May 12,

- 7 -

1999, AMS agreed to a trade-in of the Capricorn, but only on the condition that AMS was able to find another party to purchase the console. The sales contract for the purchase of the Capricorn, however, mentions nothing about a contingency requiring that AMS find another buyer for the console before being entitled to demand an exchange of the Capricorn.

The court recognizes that Trax's own conduct may not be consistent with its contractual obligations. Through its counsel, Trax sent AMS a letter merely a day after receiving AMS's letter of May 12th, rejecting all of AMS's offers contained in the May 12th letter and stating, "It appears that litigation remains Trax['s] only viable option." (Ex. O, Def. Reply. Aff.) In stating its immediate, wholesale rejection of AMS's offers and threatening imminent litigation, Trax itself perhaps failed to "negotiate the exchange" of the Capricorn. Nevertheless, the issue on the motion is not whether Trax has complied fully, but whether AMS's compliance with its own obligations is undisputed. Both the letter of May 12th and the letter of May 13th refer to a face-to-face meeting between the two parties that took place prior to the exchange of letters. The record, however, does not indicate what transpired at this meeting. In short, the paucity of evidence in the record surrounding the actions of the two parties subsequent to the Capricorn's failure to turn a profit requires the court to conclude that there are genuine disputes concerning AMS's compliance, with its contractual obligation to either assist Trax in marketing the Capricorn or to negotiate the exchange of the Capricorn for an AMS analog console of equal or greater value. Accordingly, AMS's motion for summary judgment on Trax's breach of contract claim is denied.

B.  Count II-Breach of Warranty

AMS argues that summary judgment should be granted on Count II, which alleges breach of implied warranty of fitness for a particular purpose, because Trax agreed to waive all implied warranties when it signed the Trax Terms. The warranty section of the Trax Terms provides in pertinent part that:

> **THE WARRANTY CONTAINED IN THIS SECTION IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, AND ALL OTHER WARRANTIES, INCLUDING BUT NOT LIMITED TO ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY DISCLAIMED. AMS NEVE INC. DISCLAIMS ALL WARRANTIES, INCLUDING BUT NOT LIMITED TO ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO ANY ITEMS OF EQUIPMENT, OR SUB-SYSTEMS INCORPORATED IN THE EQUIPMENT, MANUFACTURED BY ANYONE OTHER THAN AMS NEVE INC. OR ITS AFFILIATES.**

(Trax Terms ¶ 1(e)) (Boldface/Capitalization in original). In response, Trax contends that it is not bound by the warranty waiver contained in the Trax Terms because the Trax Terms are excluded by the parol evidence rule. As a threshold issue, then, the court will determine whether the parol evidence rule excludes the Trax Terms. If the court determines that the Trax Terms are not excluded by the rule, the court will then determine whether the warranty waiver contained in the Trax Terms is valid.

The parol evidence rule is recognized as a matter of state substantive law in Illinois. *See e.g. Liberty Sav. Assoc. v. Sun Bank of Jacksonville*, 572 F.2d 591, 594 (7th Cir. 1978). The rule requires the exclusion of extrinsic evidence, oral or written, where the parties have reduced their argument to an integrated writing. *Pecora v. Szabo*, 94

Ill. App. 3d 57, 63, 418 N.E.2d 431, 435 (2nd Dist. 1981). The threshold question for determining whether the rule applies is whether the writing in question is integrated, a matter to be determined by the trial court as a matter of law. *Storybrook Homes, Inc., v. Carlson*, 19 Ill. App. 3d 579, 582, 312 N.E.2d 27, 29 (4th Dist. 1974). A writing is integrated if the parties intended it to be a "final and complete expression of the entire agreement." *Pecora*, 94 Ill. App. 3d at 63, 418 N.E.2d at 435.

On the other hand, where multiple instruments are executed as part of a single transaction, courts will read the various instruments together and construe them as forming a single contract. *Id.* at 63, 418 N.E.2d at 436. Instruments will be construed together if there are provisions in one instrument that explain or refer to provisions in another instrument. *Tepfer v. Deerfield Sav. & Loan Assoc.*, 118 Ill. App. 3d 77, 80, 454 N.E.2d 676, 679 (1st Dist. 1983). "This is true whether or not the instruments were executed simultaneously; if executed at different times as part of the same transaction, they will be construed together." *Id.*

In the instant case, the Agreement of 10/2 explicitly refers to the Trax Terms. The last sentence of the warranty paragraph of the Agreement states, "All other warranty conditions are per the attached Terms and Conditions of Sale." (Agreement of 10/2, Ex. N to Def. Reply Aff.) If, as Trax contends, the Agreement of 10/2 was in fact the complete expression of the contract to purchase the Capricorn, it seems unlikely that the Agreement would explicitly refer to another document. Furthermore, the Agreement of 10/2 contains no merger clause indicating that the document is a full and complete expression of the entire agreement. For these reasons, the court holds

- 10 -

that the Trax Terms are not excluded by the parol evidence rule and are part of the contract to purchase the Capricorn.

The court concludes, further, that the waiver of implied warranties found in the Trax Terms is a valid one. "The implied warranty of merchantability may be disclaimed if the word 'merchantability' is used in the written document and is conspicuous.'" *L.S. Heath & Son, Inc., v. A T & T Info. Sys.*, 9 F.3d 561, 571 (7th Cir. 1993). "To disclaim the implied warranty of fitness for a particular purpose, on the other hand, the writing need not specifically mention 'fitness for a particular purpose' but the disclaimer must be conspicuous." *Id.* Generally, to be conspicuous, a disclaimer must be in larger print or appear in a contrasting type or color. *Id.*

In *L.S. Heath*, the disclaimer at issue was set in bold, all-capital lettering and stated:

> "WARRANTY EXCLUSIONS FOR TERM PLANS OR PURCHASE": EXCEPT AS SPECIFICALLY MADE HEREIN, A T & T AND ITS AFFILIATED SUBCONTRACTOR AND SUPPLIERS MAKE NO WARRANTIES, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIM ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

*Id.* at 571. The *L.S. Heath* court held that this was an effective disclaimer of implied warranties and affirmed summary judgment for the defendant. The court noted that the writing was a valid waiver because it specifically mentioned the word "merchantability" and, although not required, also used the phrase "fitness for a particular purpose." Moreover, the court reasoned that the use of capital letters,

combined with the bold-faced heading **"WARRANTY EXCLUSIONS"** made the writing conspicuous.

According to the requirements for an effective waiver of implied warranties set forth in *L.S. Heath*, the disclaimer in the Trax Terms is a textbook example of how to properly draft a waiver of such warranties. As quoted earlier, the Trax Terms specifically disclaim **"ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, AND ALL OTHER WARRANTIES, INCLUDING BUT NOT LIMITED TO ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY DISCLAIMED."** (Trax Terms ¶ I(e), Ex. K to Def. Reply Aff.) (Boldface/Capitalization in original). Furthermore, the section is set off in boldface type and capital lettering. (*Id.*) Thus, the court finds that the Trax Terms contain a valid disclaimer of implied warranties, and AMS's motion for summary judgment is granted on Trax's claim for breach of implied warranty.

C. **Claim for Consequential Damages**

AMS also seeks summary judgment on Trax's claims for lost profits and other consequential damages. AMS notes that the Trax Terms document contains an unequivocal waiver of such damages: "In no event shall AMS Neve Inc. be liable (including without limitation, under any theory in torts) for any loss of use, revenue, anticipated profits or special, indirect, incidental or consequential damages arising out of or in connection with this agreement or the use or performance of the equipment." (Trax Terms ¶ L.)

Waivers of this nature are expressly authorized by Article 2 of the Uniform Commercial Code[1] which governs the Capricorn transaction. Specifically, Section 2-719 provides:

> Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of the damages where the loss is commercial is not.

810 Ill. Comp. Stat. 5/2-719(3). Courts routinely enforce such waivers. For example, in *Lefebure Intergraphics, Inc., v. Sanden Mach. Ltd.*, 946 F. Supp. 1358, 1372 (N.D. Ill. 1996), a case involving the sale of a commercial printing press, the court was asked to determine the validity of a clause in the sales contract that purported to waive consequential damages: "Seller will at no time be liable for any losses sustained by purchaser due to shortages of operating materials or supplies, or for consequent damages such as loss of anticipated profits, loss of production, or increased cost of operation." *Id.* at 1370. Based on this waiver, the *Lefebure* court held that the plaintiff was not entitled to consequential damages on its claims for breach of contract and breach of express warranty. *Id.* at 1372. In upholding the waiver, the court emphasized that both of the parties were relatively sophisticated businesses, and that there was therefore nothing unconscionable about the waiver of damages. *Id.*

Even damages waivers more sweeping than the one in *Lefebure* have been upheld. In *Man Roland Inc. v. Quantum Color Corp.*, 57 F. Supp.2d 569 (N.D. Ill.

---

[1] Illinois adopted the Uniform Commercial Code on July 1, 1962. *See Cates v. Morgan Portable Bldg. Corp.*, 591 F.2d 17, 20 (7th Cir. 1979).

1999), the court dismissed a dissatisfied buyer's counterclaim for consequential damages based on the following provision in the sales contract:

> In no event shall Seller or the manufacturer of the Machinery and Accessories . . . be liable for damages of any nature, including without limitation, special, direct, indirect, incidental or consequential damages, whether or not relating to or in any manner resulting from or arising out of any nonconformity of the Machinery and Accessories to the warranty herein, any defect in material or workmanship, any performance or nonperformance by Seller of any of the obligations or delay of delivery or failure to deliver for whatever cause, other than damages expressly provided for above.

57 F.Supp.2d at 575. After examining this provision, the *Man Roland* court noted that the buyer "waived its right to consequential damages when it signed the contract." *Id.*

In the instant case, the waiver of consequential damages in the Trax Terms is substantively similar to the waivers enforced in *Lefebure* and *Man Roland*. The court concludes that Trax waived its right to consequential damages when it signed the contract to purchase the Capricorn.

In its brief in opposition to summary judgment, Trax cites *Adams v. J.I. Case Co.*, 125 Ill. App.2d 388, 261 N.E.2d 1 (4th Dist. 1970) for the proposition that waivers of consequential damages like the one contained in the Trax Terms can be overcome by "special circumstances." The *Adams* court reversed dismissal of a complaint brought by the purchaser of a tractor, concluding that plaintiff's allegations concerning his "particular needs" in his tractor business and defendants' willful delays and negligence in making repairs were sufficient to establish "special circumstances" necessary to defeat a waiver of consequential damages. *Id.* at 406, 261 N.E.2d at 9.

More recently, however, the Seventh Circuit has declined to follow *Adams*. In *Smith v. Navistar Int'l Transp. Co.*, 957 F.2d 1439 (7th Cir. 1992), the court rejected the premise, central to the holding of *Adams*, that "failure of the essential purpose of the limited remedy automatically means that a damage award will include consequential damages." *Smith*, 957 F.2d at 1443 (*citing AES Tech. Sys., Inc. v. Coherent Radiation*, 583 F.2d 933 (7th Cir. 1988)). Plaintiff in *Smith* purchased a truck subject to a waiver of liability "for incidental and consequential damages." Soon after the purchase, the truck had brake problems that put it out of service for 45 days, and the purchaser sought to enforce the repair or replace warranty in the purchase agreement. Relying on *Adams*, plaintiff argued that the waiver of consequential damages was unenforceable, but our Court of Appeals disagreed. The *Smith* court concluded that the determination of whether a waiver of consequential damages is a valid one should be undertaken on a case-by-case approach after examining the particular facts of each case. 957 F.2d at 1444. Applying this analysis, the *Smith* court affirmed a cap on damages available against the defendant manufacturer. 957 F.2d at 1445. In doing so, the court stressed the relatively equal bargaining power of the parties. Specifically, the court emphasized that the plaintiff, Smith, was "an experienced business operator" who had compared defendant's product with similar products from other manufacturers, "drawn up a list of sixteen specifications" for the product that "he felt met his specific need," and "refused to accept" any product that did not meet those requirements. *Id.*

Like the plaintiff in *Smith*, Reid Hyams, president of Trax and the man primarily responsible for the acquisition of the Capricorn, was a sophisticated businessman. Before agreeing to purchase the Capricorn, Hyams flew to New York for demonstrations of the Capricorn at another recording studio. (Amended Complaint ¶ 7.) Furthermore, in letters sent out to prospective financiers in August 1997, Hyams held himself out as "a conservative businessman in a high tech business," one who "[is] not going to commit to a million dollar investment without doing the proper research." (Exs. P-R to Def. Reply Aff.) Thus, as the *Smith* court wrote:

> [The court has] failed to discover evidence in the record that the parties intended that the defendants bear the risk of consequential damages or that the parties' relative bargaining power was so unequal that the disclaimer was unconscionable and [the court] refuse[s] to re-write the contract including [its] clear exclusion of consequential damages.

957 F.2d at 1445. AMS's motion for summary judgment is granted on Trax's claim for consequential damages.

## CONCLUSION

AMS's motion for summary judgment on Trax's breach of contract claim is denied because genuine issues of material fact exist as to whether AMS breached the contract for the purchase of the Capricorn. Summary judgment is granted for AMS on Trax's breach of implied warranty claim and Trax's claim for consequential damages.

ENTER:

Dated: August 3, 2001

REBECCA R. PALLMEYER
United States District Judge